```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF OHIO
                           EASTERN DIVISION
```

Eric Evans,                      :

    Plaintiff,                :

    v.                        :      Case No. 2:07-cv-1061

Ohio Public Employee
Retirement System,               :      Magistrate Judge Kemp

    Defendant.

## OPINION AND ORDER

Plaintiff Eric Evans brought this action against defendant Ohio Public Employees Retirement System seeking damages for disability discrimination under the Fourteenth Amendment to the United States Constitution and various federal statutes. Presently before the Court is OPERS' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Mr. Evans filed a motion and memorandum of points and authorities in opposition to summary judgment. OPERS replied in support of its motion. Mr. Evans then filed, without first seeking leave of Court, a memorandum in opposition to OPERS' reply. For the following reasons, the Court will grant summary judgment in favor of OPERS on each of Mr. Evans' claims.

I.

Summary judgment is not a substitute for a trial when facts material to the Court's ultimate resolution of the case are in dispute. It may be rendered only when appropriate evidentiary materials, as described in Fed. R. Civ. P. 56(c), demonstrate the absence of a material factual dispute and the moving party is entitled to judgment as a matter of law.

Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464 (1962). The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654 (1962). The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Of course, since "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion. It is with these standards in mind that the motion for summary judgment will be decided.

## II.

The underlying facts of this case are not disputed. Mr. Evans formerly served as a police officer in Ohio. On July 30, 1992, he began contributing to the Ohio Police and Fire Pension Fund. Less than a year later, Mr. Evans suffered severe injuries while in the line of duty and was no longer able to work as a full-time police officer. As a result of those injuries, Mr. Evans applied for and began to receive a maximum partial

disability retirement benefit from OPFPF.  Mr. Evans has
continued to receive these monthly disability retirement benefits
at all relevant times.

On November 21, 1993, the Gahanna police department hired
Mr. Evans as a dispatcher.  As a public employee, he was required
to contribute to OPERS.  At the time he began making these
contributions, Mr. Evans was an "other system retirant" as
defined by Ohio Rev. Code §145.38(A)(2)(a).  As an "other system
retirant," his contributions went into a money purchase annuity
account with OPERS.  Throughout his employment, the Gahanna
police department also made employer contributions to OPERS on
his behalf.

On July 6, 2007, Mr. Evans voluntarily resigned at age 38
from his position as a dispatcher for the Gahanna police
department due to his disabilities.  OPERS had informed Mr. Evans
prior to his resignation that he would be ineligible to receive
the matching portion of his employer's contributions until he
attained the age of 65.  On October 12, 2007, Mr. Evans applied
for and subsequently received a lump-sum distribution of his
contributions to OPERS with interest.  He was denied, however,
payment of the police department's employer contributions.  At
the time of his application for payment, Mr. Evans had not yet
reached the age of 65.

After receiving this distribution, Mr. Evans filed a charge
of disability discrimination against OPERS with the United States
Equal Employment Opportunity Commission.  He eventually obtained
a right-to-sue letter from the EEOC and commenced this civil
action within 90 days of his receipt of that letter.

### III.

In his complaint, Mr. Evans asserted claims arising under
Title VII of the Civil Rights Act of 1964 as subsequently
amended, the Rehabilitation Act of 1973 as amended, the Americans

3

with Disabilities Act, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. In his response to OPERS' summary judgment motion, he conceded that his Title VII claim had little merit and consequently abandoned that claim. See Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment p.7. Accordingly, the Court determines that OPERS is entitled to judgment as a matter of law on Mr. Evans' Title VII claim.

A. Title I of Americans with Disabilities Act

Mr. Evans asserts claims under both Title I and Title II of the ADA. Title I prohibits covered employers from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to ... compensation... and other terms, conditions, and privileges of employment." 42 U.S.C. §12112(a). This prohibition extends to forbid discrimination in the area of fringe benefits, including retirement pensions. See Fobar v. City of Dearborn Heights, 994 F.Supp. 878, 881 n.1 (E.D. Mich. 1998)(citing §12112(b)). A "qualified individual with a disability" is "an individual who, with or without reasonable accommodations can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. §12111(8).

In its reply memorandum, OPERS argues for the first time that it is not a "covered entity" under Title I of the ADA. Because OPERS did not satisfy its initial responsibility to inform the Court and the plaintiff of this particular basis for summary judgment, Mr. Evans was not required to respond. In fact, under S.D. Ohio Civ. R. 7.2(a)(2), he was not permitted to respond to OPERS' reply absent leave of Court. Moreover, OPERS' contention does not appear to be correct. In Betts v. Hamilton County Bd. of Mental Retardation, 631 F.Supp. 1198 (S.D. Ohio 1986), aff'd, 848 F.2d 692 (6th Cir. 1988), rev'd on other

4

grounds, 492 U.S. 158 (1989), Judge Spiegel held that OPERS was an "employer" as defined by the Age Discrimination in Employment Act because it exercised authority over various aspects of the terms and conditions of a public employee's employment. Id. at 1206. Further, the Ohio Attorney General has opined that the Ohio Highway Patrol Retirement System qualifies as its members' employer for purposes of the ADEA. See 1993 Ohio Op. Atty. Gen. No. 93-071. There is reason to believe that OPERS would be considered an employer under the ADA as well. See Satterfield v. Tennessee, 295 F.3d 611, 617 n.5 (6th Cir. 2002)(Title VII, ADEA, and ADA define "employer" essentially same way). Accordingly, the Court concludes that OPERS is a "covered entity" for purposes of Mr. Evans' claim under Title I of the ADA.

A claim for disability discrimination is analyzed under the framework for deciding discrimination cases set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). To establish a prima facie case of disability discrimination under Title I of the ADA, a plaintiff must show that (1) he was "disabled" within the meaning of the Act; (2) he was qualified for the position, with or without an accommodation; (3) he suffered an adverse employment decision with regard to the position at issue; and (4) a non-disabled person replaced him or was selected for the position that the plaintiff sought. Kocsis v. Multi-Care Management, Inc., 97 F.3d 876, 882 (6th Cir. 1996). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. Id. at 883. Should the defendant meet its burden of production, the plaintiff must then produce evidence that the defendant's proffered reason was not the true reason, but was merely a pretext for unlawful disability discrimination. Id.

The ADA defines "disability" as a physical or mental

5

impairment that substantially limits at least one of an individual's major life activities, having a record of such impairment, or being regarded as having such impairment. See 42 U.S.C. §12102(2). Under the ADA's implementing regulations, major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, learning, and working." See 29 C.F.R. §1630.2(i).

Mr. Evans recites in his memoranda that he has both physical and mental impairments that substantially limit one or more of his major life activities. He lists various physical impairments as having been recorded. These physical impairments include "[l]eft knee, right ankle, TII vertebrae fracture, and generalized arthritis." Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment p. 9. He also states that he has been diagnosed with and continues to suffer from post traumatic stress syndrome. Mr. Evans claims that as the result of a devastating knee injury that occurred while in pursuit of a criminal, he could no longer perform the duties of a police officer. He has had to undergo multiple surgeries on his knee and continues to have difficulty walking, standing, lifting, and bending. With reasonable accommodations afforded him by the Gahanna police department, Mr. Evans says he was able to work as a dispatcher until his PTSD made it impossible for him to continue. He maintains the fact that his employer offered him these accommodations means that he was regarded as having a disability.

Although the above statements, if supported by any of the evidentiary materials contemplated by Rule 56, would satisfy Mr. Evans' burden as to the first element of a prima facie case of disability discrimination, he has not submitted so much as his own affidavit to show that he is "disabled" for purposes of the ADA. Mr. Evans may not rely merely on the allegations set forth

in his complaint and memoranda, but must respond with affidavits or other evidence to set out facts demonstrating a genuine issue for trial. See Fed. R. Civ. P. 56(e)(2). By failing to respond in this manner as to an element for which he bears the burden of proof at trial, Mr. Evans risked the entry of summary judgment in favor of OPERS on his claim under Title I of the ADA.

Had Mr. Evans come forward with evidence tending to prove that he was "disabled," he would still need to show that he is qualified for the position. It is unclear in this instance just what constitutes the "position" for which Mr. Evans must be qualified. By his own admission, he can no longer perform the essential functions of either a dispatcher or a police officer. Therefore, with respect to these positions, Mr. Evans is not a "qualified individual with a disability." See Parker v. Metropolitan Life Ins. Co., 99 F.3d 181, 185-87 (6th Cir. 1996), reh'g granted and judgment vacated on other grounds, 107 F.3d 359 (6th Cir. 1997)(en banc); Fobar, 994 F.Supp. at 882-83. If, instead, the analysis focuses on whether Mr. Evans was qualified to receive a refund of the contributions made to OPERS on his behalf by the Gahanna police department, the result does not change. As an "other system retirant," he would not have been eligible for a benefit under OPERS that included his employer's contributions until he attained the age of sixty-five. See Ohio Rev. Code §145.384 (E). Because Mr. Evans applied for payment of his OPERS contributions before reaching age 65, he was not qualified to receive the matching contributions of the Gahanna police department.

### B. Title II of Americans with Disabilities Act

Title II of the ADA declares that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be

subjected to discrimination by any such entity." 42 U.S.C. §12132. The term "qualified individual with a disability" is defined as " an individual with a disability who, with or without reasonable modification to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. §12131(2).

Mr. Evans alleges that OPERS discriminated against him by placing his contributions, as well as the contributions made by the Gahanna police department on his behalf, into a money purchase annuity instead of a "regular" retirement account. According to Mr. Evans, the contributions of non-disabled public employees are treated differently. For example, he is personally aware of other public employees with as few as 5 years of service who are receiving their employers' contributions and unreduced retirement benefits. He does not say, however, whether these other public employees reached age 65 before they obtained their employers' contributions or began receiving their unreduced annuities.

To establish a <u>prima facie</u> under Title II of the ADA, a plaintiff must demonstrate that (1) he has a disability; (2) he is otherwise qualified; and (3) he is being excluded from participating in, being denied the benefits of, or being subjected to discrimination under the program solely because of his disability. <u>See</u> <u>Dillery v. City of Sandusky</u>, 398 F.3d 562, 567 (6th Cir. 2005); <u>Jones v. City of Monroe</u>, 341 F.3d 474, 477 (6th Cir. 2003).

As noted previously in connection with his Title I claim, Mr. Evans has failed to come forward with evidence that he has a disability. Further, because he was not yet 65, he did not meet

an essential eligibility requirement for obtaining a lump-sum payment that included his employer's contributions to OPERS. See Ohio Rev. Code §145.384(E)(2). Lastly, Mr. Evans has not shown that he was excluded from participating in a "regular" retirement account on account of his disability or that he was ineligible to receive his employer's contributions solely because he was disabled. Ohio Rev. Code §145.38(D)(1) excludes all other system retirants from membership in OPERS, not just those who retired on a disability, and Mr. Evans would have qualified to receive payment of his employer's contributions notwithstanding his disability had he waited until age 65. See Fobar, 904 F.Supp. at 887 (where all employees, including disabled employees, may qualify for regular pension if they meet age and service requirements, program does not discriminate); Gagliardo v. Dinkins, 89 N.Y.2d 62, 76 (1996)(requirement that transit police officers have 20 years accredited service to be eligible for supplemental retirement benefit precludes all retired officers with fewer than 20 years service from receiving benefit, not simply those who retired on disability, and hence does not violate Title II of ADA). Mr. Evans has, therefore, failed to meet any of the elements required to make out a prima facie case of discrimination under Title II of the ADA.

### C. Equitable Estoppel

Mr. Evans contends that since OPERS did not inform him at the time he was hired by the Gahanna police department that he would be considered an "other system retirant," OPERS should be equitably estopped from denying his eligibility for a lump-sum payment of his employer's contributions. As a general rule, a state or its agencies are not bound by the doctrine of equitable estoppel in exercising a governmental function. State ex rel. Shumway v. State Teachers Retirement Bd., 683 N.E.2d 70, 76 (Ohio Ct. App. 1996).

9

In Shumway, the appellant argued unsuccessfully that the State Teachers Retirement System and the board should be estopped by their conduct from applying Ohio Rev. Code §3307.013(B) to the determination of his final average salary for purposes of calculating his retirement benefit. The Ohio Legislature had amended this subsection to exclude certain earnings from a teacher's final average salary, and the amendment became effective several months prior to the appellant's retirement. The appellant met with a STRS counselor and received advice several times in connection with his retirement. He argued that he had relied to his detriment on the advice and benefit projections he received from the counselor. He also contended that estoppel should apply because at the same time the counselor was advising him, STRS was allegedly working with the legislature to change the law. The court of appeals concluded that these arguments were not well-taken since STRS was exercising a governmental function. Id.

In this case, OPERS was similarly exercising a governmental function when it applied §145.384 in determining that Mr. Evans was eligible for a lump-sum payment of only his contributions plus interest. This statute clearly established an age requirement for obtaining payment of the employer contributions, and Mr. Evans did not meet this requirement at the time he submitted his application. "Where the Legislature has specifically imposed limitations on the exercise of power by a public body, equitable principles of estoppel are not available." O'Neill v. State of Ney Jersey Dep't of Treasury, Division of Pensions, 428 A.2d 562, 563 (N.J. 1981). Accordingly, Mr. Evans cannot invoke equitable estoppel particularly where, as here, OPERS made no representations to induce him to accept employment with the Gahanna police department.

In O'Neill, the Board of Trustees for the New Jersey Public

Employees Retirement System cancelled the petitioner's retirement allowance and refunded his contributions after discovering that he had been receiving retirement benefits from another state when he began working for the State Commission of Investigation and enrolled in PERS. A New Jersey law prohibited enrollment in PERS of any employee receiving benefits from another pension fund in that state or any other state. In affirming the board's decision, the New Jersey Supreme Court held that in addition to the absolute and unambiguous language in the statute, there was no evidence that any representative of the Division of Pensions or PERS had done anything to induce the petitioner to accept employment with SCI. Id.

### D. Rehabilitation Act

The Rehabilitation Act of 1973 provides in relevant part that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ..." 29 U.S.C. §794(a). The analyses of claims made under the Rehabilitation Act and Title II of the ADA are roughly the same. See Mahon v. Crowell, 295 F.3d 585, 588-89 (6th Cir. 2002).

To make out a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must prove that (1) he is disabled; (2) he was otherwise qualified for the benefit, program, or activity; (3) he was discriminated solely because of his disability; and (4) the relevant program or activity is receiving federal funding. See Doe v. Salvation Army, 531 F.3d 355, 358 (6th Cir. 2008). For purposes of this case, there are no material differences as to the first three elements between Title II of the ADA and Section 504 of the Rehabilitation Act. A separate analysis is therefore unnecessary. See Jones, 341 F.3d

11

at 477 n.3.  Mr. Evans has failed to satisfy these elements for the same reasons he failed to establish a prima facie case under Title II of the ADA.  Additionally, there is no issue of fact concerning the lack of receipt of federal funding by OPERS.

### E. Equal Protection Clause

The Fourteenth Amendment prohibits any State from inter alia "deny[ing] to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, §1.  The Equal Protection Clause protects against intentional and arbitrary discrimination.  Warren v. City of Athens, 411 F.3d 697, 710 (6th Cir. 2005).  Mr. Evans argues that the Ohio laws governing OPERS discriminated against him due to his disabilities because he allegedly received lesser benefits than a non-disabled employee with fewer years of service.  He further contends that "[t]he State of Ohio could find a better alternative to meet its legitimate purpose than [by] discriminating against disabled public employees."  Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment p. 17.

Where no fundamental right nor suspect class is involved, a court reviews a governmental classification under the rational basis test.  See Midkith v. Adams County Regional Water Dist., 409 F.3d 758, 770 (6th Cir. 2005).  Under this test, the classification is afforded a strong presumption of validity and will be upheld as long as it is reasonably related to some legitimate government purpose.  Id.  A plaintiff bears a severe burden under this test and must "negate all possible rational justifications for the distinction."  Id. (quoting Gean v. Hattaway, 330 F.3d 758, 771 (6th Cir. 2003)).

Courts have upheld under the rational basis test a variety of classifications involving pension and/or disability benefits within public retirement systems.  See Castellano v. Board of Trustees of Police Officers' Variable Supplements Fund, 937 F.2d

12

752, 755-57 (2nd Cir. 1991)(statutory scheme allowing VSF payments only to "for service" retirees served legitimate governmental interest of discouraging experienced members of police force from seeking early retirement); Hess v. St. Joseph Police Pension Fund, 788 F.2d 1344, 1346 (8th Cir. 1986)(different treatment of police officers with fewer than five years experience motivates officers to remain with force at least five years and thus provides citizens with more experienced police officers); Leheny v. City of Pittsburgh, 183 F.3d 220, 227 (3rd Cir. 1999)(offset by city of pension benefits by amount of workers' compensation received bears rational relation to stated government purposes of maintaining fiscal integrity and preventing payment of duplicate benefits); Haworth v. Office of Personnel Management, 112 Fed. App'x 406, 408 (6th Cir. 2004)(statute requiring offset of federal retiree's retirement benefits by amounts he earned as intermittent employee rationally related to goal of protecting public fisc by discouraging double-dipping by retired employees); Dishon v. Maine State Retirement System, 569 A.2d 1216, 1217 (Me. 1990)(legislature could reasonably conclude that state disability retirement benefits amount to long-term wage replacement for disabled worker such that offset of social security benefits and workers' compensation payments for disability benefits, but not for ordinary retirement benefits did not violate equal protection); Roby v. Board of Trustees of Employees' Retirement System of City of New Orleans, 650 So. 811, 814 (Ct. App. La. 1995)(statute which excluded from municipal retirement system employees covered by any other statutory retirement system, but contained exception for elected officials bore rational relationship to conceivable state interest of attracting qualified persons to elected office). Many of the justifications found in these cases could equally serve as legitimate government purposes for the statutory scheme

at issue in this case.

In this case, Mr. Evans had the burden of negating all conceivable justifications for the fact that he, as a disabled employee, was allegedly treated less favorably under the laws governing OPERS than other non-disabled public employees who had fewer years of service, but who may have attained the age of 65. See TriHealth, Inc. v. Bd. of Commissioners, 430 F.3d 783, 790-91 (6th Cir. 2005). OPERS had no obligation to come forward with evidence to uphold the rationality of its statutory scheme. Id. Mr. Evans failed to sustain his burden as it is insufficient as a matter of law simply to say that the State of Ohio could find a better means of achieving its purpose.

IV.

Based on the foregoing reasons, the motion of defendant Ohio Public Employees Retirement System for summary judgment (#23) is GRANTED. The Clerk shall enter final judgment in favor of OPERS and against plaintiff Eric Evans consistent with this Opinion and Order.

/s/ Terence P. Kemp
United States Magistrate Judge